UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOANNE VEGA,

                     **Civ. No.**

            Plaintiff,

      -against-                          **COMPLAINT**

THE CITY OF NEW YORK,
THE NEW YORK CITY DEPARTMENT       **(JURY TRIAL DEMANDED)**
OF CORRECTION, CAPTAIN EDWICH
JASMIN (Individually And In His Respective
Capacity As An Acting Officer of the New
York City Department of Correction),
CAPTAIN LEON BRITTON (Individually
And In His Respective Capacity As An
Acting Officer of the New York City
Department of Correction), KAREN
TYSON and KENYATTA JOHNSON
(Individually And In Their Respective
Capacities as Executive Members of the
New York City Department of Correction
Union and Members of the New York
City Department of Correction)

                  Defendants.
-------------------------------------------------------------------X

      Plaintiff, JOANNE VEGA ("Plaintiff" or "VEGA"), by and through her

attorneys, L & D LAW P.C (Liggieri & Dunisha), complaining of Defendants, jointly

and severally, herein respectfully shows to this Court and alleges the following:

### NATURE OF THE CASE

1.       This is an action to remedy discrimination based on gender discrimination, sexual

harassment, disability discrimination, hostile work environment and retaliation is

brought by Plaintiff Joanne Vega pursuant to the provisions of the Civil Rights Act of

1866, and pursuant to Article I, §11 of the New York State Constitution for the violation

of her due process and other constitutional rights to be free from gender discrimination,

sexual harassment, disability discrimination, hostile work environment and retaliation.

2.      Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), and to remedy violations of the laws of the State of New York, based upon diversity and the supplemental jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated and retaliated against by her employer on the basis of gender discrimination, sexual harassment and retaliation inflicted upon Plaintiff by Defendants GMVA.

3.      Defendants engaged in a pattern and practice of committing sexual harassment, and had prior knowledge of such acts before Plaintiff Joanne Vega was sexually harassed/assaulted.

<b><u>JURISDICTION AND VENUE</u></b>

4.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and the Civil Rights Act of 1866 and 1871 which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

5.      The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York.

<b><u>JURY DEMAND</u></b>

6.      Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

<b><u>PARTIES</u></b>

7.      Plaintiff Joanne VEGA is an individual woman who resides in the State of New York, Suffolk county.

8.      Defendant, The City of New York Department of Correction is a municipal corporation, incorporated in the State of New York. The causes of action in this case

arise within the County of Queens, County of New York and City of New York.

9.      The City of New York Department of Correction assumes the risk of its Captains and the employment of said Captains who act under the color of law as uniformed officers of the City of New York and its subsidiary agency, the Department of Correction.

10.     The Department of Correction City of New York has their headquarters at 75-20 Astoria Blvd, East Elmhurst, NY 11370.

11.     At all relevant times, the City of New York acted through its agency, The New York City Department of Correction, to commit the acts alleged in this Complaint and were responsible for such acts.

12.     A substantial and significant portion of the events took place at Transportation Division, which is located at 1717 Hazen Street, East Elmhurst, New York, New York 11370.

13.     At all times material, Plaintiff Joanne VEGA (hereinafter referred to as "VEGA" or "Plaintiff") was and is a Corrections Officer, employed by the City of New York and it's agency The New York City Department of Correction.

14.     At all times material, Defendant The New York City Department Of Correction (hereinafter referred to as "DOC" is a municipal corporation, operating under the purview of the City of New York and duly existing by the virtue and laws of the State and City of New York. The DOC manages eleven inmate facilities in the City of New York throughout all five boroughs.

15.     At all times material, Defendants' Employee Captain Edwich JASMIN (hereinafter referred to as "Defendant JASMIN") is an individual man believed to reside in the State of New York.

16.     At all times material, Defendant JASMIN was and is the Personnel Administrative

Captain within the Department of Transportation at Defendant DOC.

17.     At all times material, Defendants' employee Defendant JASMIN held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, which included the power to hire and fire as well as take adverse actions against the Plaintiff.

18.     At all times material, Defendants' Employee Captain LEON BRITTON (hereinafter referred to as "BRITTON") is an individual man believed to reside in the State of New York.

19.     At all times material, Defendant BRITTON was and is Personnel Administrative Captain within the Department of Transportation at Defendant DOC.

20.     At all times material, Defendant BRITTON held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, with the power to hire and fire her.

21.     At all times material, Defendant DOC's employee Defendant Karen TYSON was and is an Executive Board Member of the Correction Officers Benevolent Association (C.O.B.A) and was at all times relevant, a colleague and friend to Defendant Captain JASMIN.

22.     At all times material, Defendant DOC's employee Defendant Johnson was and is an Executive Board Member of C.O.B.A., and was at all times relevant, a colleague and friend to Defendant Captain JASMIN.

## PROCEDURAL HISTORY

23.     On or about November 3, 2018, Plaintiff Vega filed a charge of sexual harassment, gender discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC").

24.     On or about March 1, 2019, the EEOC issued a Right to Sue letter allowing the Plaintiff to file a lawsuit against the respondent(s) under federal laws in federal court.

25.     This lawsuit is being filed within receipt of the (90) day EEOC Right to Sue provision.

26.     On or about July 7, 2018, Plaintiff Vega filed a verified complaint of disability, sex, opposed discrimination/retaliation with the New York State Division of Human Rights ("Division").

27.     During the Division's investigation it was found that the Defendants did not mention a previously filed complaint against Defendant JASMIN on the basis of sex, discrimination and retaliation. The aforementioned Complaint, bearing striking similarities to Plaintiff Vega's Complaint, alleged that the Complainant was subjected to incidents of isolated inappropriate touching, kissing and inappropriate comments by Defendant JASMIN, which placed the Department of Correction on notice and represents a pattern of unlawful behavior on the part of Defendant Jasmin in which the Department of Correction failed to take any remedial action.

28.     Upon information and belief, the Department of Correction and Defendant JASMIN were on notice that this type of behavior was unlawful and unacceptable, yet, the DOC still permitted Defendant JASMIN to work alongside female officers such as Plaintiff Vega.

29.     After investigation, the Division has determined that **PROBABLE CAUSE** exists to believe that the Defendants have engaged in or are engaging in the unlawful discriminatory practice complained of.

### FACTS

30.     In or around 1989, Defendants hired Plaintiff as a Probationary Correction Officer within the North Infirmary Command (NIC) at Rikers Island, wherein she first met JASMIN.

31.     In or around 2016, Plaintiff requested a transfer from NIC to the Transportation

Division.

32.     In or around 2016, Plaintiff visited the Administration Office in Transportation, where she bumped into Defendant JASMIN, who she hadn't seen in over twenty-seven years.

33.     Plaintiff and Defendant JASMIN greeted each other and spoke briefly and professionally.

34.     On or about October 31, 2016, Plaintiff was officially transferred to the Transportation Division. From then on, she regularly saw Defendant JASMIN.

35.     On or about March 22, 2017, as Plaintiff was walking through the corridor of the Dispatch and Administration Offices Defendant DOC's Captain Defendant JASMIN ordered Plaintiff to the men's locker room where he sexually assaulted the Plaintiff by forcing himself on the Plaintiff, groping her, and shoving his tongue in her mouth.

36.     Notably, the locker rooms commonly serve as recreation areas for both male and female officers during breaks where they converse with each other and/or watch television.

37.     When Plaintiff walked into the locker room, nobody was present except for Plaintiff's supervisor, Defendant JASMIN.

38.     As Plaintiff had known Defendant JASMIN for over 27-years, she did not think anything of it as he had always been respectful up until that moment and Plaintiff felt that there was a trust bond between them.

39.     In greater detail, the following unlawful and egregious sexual assault and harassment occurred:

40.     **As soon as Plaintiff entered, Defendant JASMIN closed the door, grabbed Plaintiff's shirt and pulled Plaintiff towards him.**

41.     **Defendant JASMIN, forcibly kissed Plaintiff, shoved his tongue in her mouth**

while grabbing and squeezing her breasts.

42.     Plaintiff immediately tried to push Defendant JASMIN away with her right arm.

43.     In response, Defendant JASMIN aggressively grabbed Plaintiff's right hand and forced the Plaintiff to put her hand onto Defendant Jasmin's crotch, directly on the spot where Defendant JASMIN's penis was located.

44.     Gripping the Plaintiff's hand even tighter, and refusing to let go, Defendant JASMIN told Plaintiff, "Feel how hard my dick is."

45.     Plaintiff pulled away from Defendant JASMIN, told him "you're fucking crazy!" and rushed away towards the door, running out of the immediate area feeling scared, angry, humiliated, and violated on so many levels.

46.     As Plaintiff was walking away from the scene, Defendant JASMIN threatened her angrily, "if I find out you ever went with someone else around here before you're with me I will kill you."

47.     There was no smile on Defendant JASMIN's face, in fact, Plaintiff could see how angry he was that Plaintiff did not concede to his unwelcomed and unwanted predatory sexual advances.

48.     Defendant JASMIN's egregious behavior left Plaintiff Vega in shock, in embarrassment, ashamed and afraid to tell anyone at work what just happened.

49.     Defendant JASMIN sexually assaulted Plaintiff at headquarters, discriminated against her on the basis of her sex, and had threatened her life.

50.     As a direct result of this threat, Plaintiff Vega did not immediately go to authorities because she feared for her life.

51.     From that moment onward, Plaintiff felt extremely traumatized, humiliated, and in fear of both her safety and consequential retaliation if she were to report Defendant

JASMIN's sexual assault.

52.	Plaintiff did not speak with anyone at DOC that day, but she confided with her friend and ex-coworker Cesar COTTO where she told him everything that had happened but left out names.

53.	Officer COTTO was furious and pled for Plaintiff to tell him who this person was so he could help her. However, as Plaintiff was still under shock and was extremely afraid of retaliation, she did not tell him that it was Defendant JASMIN.

54.	Defendant JASMIN persisted in his predatory behavior against the Plaintiff. Defendant JASMIN continued to frequently make lewd and sexual facial expressions at the Plaintiff which included but was not limited to (i) sticking his tongue out like a snake while he acted out sexual acts with his tongue and (ii) making a number of lewd remarks to the Plaintiff as he scanned Plaintiff's body up and down with his eyes.

55.	In or around June of 2017, Plaintiff finally gathered up all her courage and tried telling a Department of Correction EEO Investigator Alice PUTINO but Plaintiff was so frightened of losing her job and the possibility of Defendant JASMIN physically attacking her that Plaintiff reluctantly cancelled the appointment she had made with Ms. PUTINO, telling her "I'm sorry I wasted your time" and left without telling her anything.

56.	However, following Defendant JASMIN's sexual assault on Plaintiff, Defendant JASMIN sexually harassed Plaintiff on a pervasive basis.

57.	Defendant JASMIN frequently scanned Plaintiff's body up and down as she passed him, repeatedly stopping her to make sexual propositions such as "let's go to a motel."

58.	At all times material, Plaintiff responded "No!" Despite her clear objections, Defendant JASMIN continued to sexually harass Plaintiff.

59.     On or about September 13, 2017, Plaintiff applied for a transfer and left the form in the possession of Mr. Elias Husamudeen's Office, the President of the Correction Officers Benevolent Association Office ("COBA"). However, Mr. Husamudeen ignored Plaintiff's request.

60.     In or around October of 2017, Plaintiff inquired as to what was going on with her transfer request, but nobody was giving her any answers.

61.     On or about November 3, 2017, as Plaintiff could no longer take Defendant JASMIN's unethical, unprofessional and flat out criminal behavior, Plaintiff hoped that by speaking with the Executive Officers of her Union, Defendant JASMIN's actions would finally stop.

62.     The feeling of resentment, depression and the loss of dignity made Plaintiff come forward and visit her Union, the 21st COBA Office, to speak with Executive Officers' Karen TYSON and Kenyatta JOHNSON.

63.     When Plaintiff reported Defendant JASMIN's sexual assault on her in the locker room, Mrs. TYSON responded, **"Captain Jasmin is a very close friend of mine."**

64.     Plaintiff further stated that she wanted COBA executives to intervene and demand that Defendant JASMIN's unlawful behavior come to an end.

65.     TYSON and JOHNSON refused to discipline Defendant JASMIN or even confront him about the assault and sexual harassment. In fact, Defendant TYSON then stated to Plaintiff that: **"Unless you go to the NYC Police Department (NYPD), you will get no help from either Ms. Johnson or me; or the COBA union for that matter."**

66.     Plaintiff clearly expressed that she went to them for the specific reason of not wanting to go public, because Plaintiff feared retaliation, as she had personally witnessed this kind of behavior from DOC Supervisors against Corrections Officers.

67.     Plaintiff made a protected Complaint regarding sex, gender, and a hostile work environment to Defendants TYSON and JOHNSON, hoping they would take some form of action to assist the Plaintiff.

68.     Plaintiff then advised Defendant TYSON and Defendant JOHNSON that she wanted to be transferred in order to get away from Defendant JASMIN.

69.     However, upon information and belief, Mrs. TYSON and Mrs. JOHNSON refused to help the Plaintiff. In fact, they went ahead and warned Defendant JASMIN that Plaintiff had complained to them about his unlawful behavior, thus conspiring to cover-up the Plaintiff's protected complaints.

70.     Plaintiff knew immediately right when Defendant JASMIN was made aware of Plaintiff's complaints because Defendant JASMIN's demeanor, behavior and mannerisms toward Plaintiff changed from sexual gestures into violent and public displays of intimidation.

71.     Defendant JASMIN would now constantly give Plaintiff murderous glares every chance he saw Plaintiff. Defendant JASMIN was informing Plaintiff that he knew what she did, with looks not words.

72.     Plaintiff made every diligent effort to avoid confronting Defendant JASMIN while at work as much as possible.

73.     Throughout September to November Plaintiff tried on several occasions, to call the COBA President Mr. Elias Husamudeen, to request a transfer.

74.     Plaintiff again asked Defendant TYSON and Defendant JOHNSON for a transfer out of the Transportation Division considering her situation but they _again_ refused to help the Plaintiff.

75.     The above actions by Defendants show that they failed to investigate or take any remedial measures to support the Plaintiff. Instead, Defendants left the Plaintiff with

her attacker and took steps in furtherance of a conspiracy whereby the Plaintiff was deprived of her Constitutional rights.

76.     COBA employees did not care that Plaintiff was being discriminated against, since Defendant JASMIN was their "Friend."

77.     Plaintiff's protected complaints went on deaf ears.

78.     Plaintiff now knew/understood that going to COBA and asking for help was a huge mistake as Defendant JASMIN was immediately put on notice about Plaintiff's complaints from his friends.

79.     Plaintiff's previous fear of retaliation was now becoming very real.

80.     Plaintiffs problems at work compounded, when on or about January 10, 2018, Plaintiff was involved in a work-related auto accident as a passenger in her official DOC vehicle.

81.     Plaintiff's DOC bus was t-boned by another vehicle causing the Plaintiff, who was the recording officer, to fall out of her seat and hit the cage in front of her.

82.     As a result of the accident, Plaintiff sustained multiple injuries to her legs, back and shoulders.

83.     Soon thereafter, Plaintiff was taken to Mount Sinai Hospital Emergency Room.

84.     Following Plaintiff's accident, Plaintiff was out of work on Worker's Comp for approximately three and a half months

85.     Plaintiff suffered and stills suffers from whiplash, swollen kidneys, and several herniated discs throughout her neck and back, requiring her to undergo ongoing physical therapy as well as epidural and cortisone shots for her severe lower back pain. In addition, Plaintiff suffered, and still suffers from severe loss of mobility.

86.     During these three and a half months, while Plaintiff was still recovering, Defendants served her with three Memorandum of Complaints (MOC's), which is the

DOC's technical terminology used to describe disciplinary charges.

87.  **These charges originate from the Administrative Office of the Transportation Division. Plaintiff is assigned to the Transportation Division. Notably, the Administrative Captain of said office where the complaints (MOC'S) originated from, is the very Captain that assaulted Plaintiff; Defendant Captain JASMIN.**

88.  **Defendant Jasmin personally signed the documents and served them on the Plaintiff.**

89.  The totality of the circumstances as cited above make clear that Defendant JASMIN was intentionally discriminating and retaliating against her for making protected complaints regarding Defendant JASMIN's unlawful behavior.

90.  After being served with the MOC, Plaintiff reached out to COBA and spoke with Senior Attorney Steve Issacs whom informed Plaintiff that it was unusual to have been served with this many MOC's at such an early period.

91.  Mr. Isaac also informed Plaintiff that these MOC's would usually be served when it was closer to the year and that there is also an 18-month clause in relation to being terminated. Therefore, it was out of the ordinary for Defendants to serve the Plaintiff with the aforementioned disciplinary charges.

92.  Mr. Isaac then instructed Plaintiff to sign the MOC disciplinary charges and mail them back to the DOC's Trials and Litigation Bureau.

93.  Finally, Mr. Isaac told Plaintiff that after she is served to go to OATH (the DOC's Disciplinary Trial Division) that she should seek legal counsel.

94.  Plaintiff was involved in an automobile accident through no fault of her own and was under medical care, treatment and supervision. Plaintiff was instructed by her doctors to take physical therapy and remain home to heal from her injuries.

95.  However, after serving Plaintiff with the three MOC's Defendant JASMIN made

it very clear to Plaintiff that these charges could lead to her termination.

96.     Defendant JASMIN took this opportunity to retaliate against Plaintiff for complaining about the sexual harassment/assault, to inflict more fear and now, to discriminate against Plaintiff on the basis of her disability.

97.     On or about March 28, 2018, upon Plaintiff's return to work after sick leave, the Plaintiff was placed back into the DOC's Transportation Division on Medically Monitored Restriction (MMR) Level III Status.

98.     The aforementioned work status was issued to her by the DOC's Health Management Division (H.M.D.)

99.     Plaintiff tried to return to work but the pain was unbearable. Due to severe back pains, Plaintiff left work in early April.

100.    On or about June 18, 2018, Plaintiff returned to work in the DOC's Transportation Division.

101.    On or about June 20, 2018, Defendant JASMIN and the DOC Acting Warden VANESSA WILLIAMS, with a smirk on their face, served Plaintiff with another write-up which stated in sum and substance that Plaintiff would receive a "Designation of Chronic Absent."

102.    Plaintiff was then served with 3 MOC's stating "abusive absenteeism" after leaving on workers' compensation to care for her injuries and again was served with Chronic Sick designation after she returned on light duty.

103.    In total, Defendant JASMIN and other Defendants served the Plaintiff with four MOCS.

104.    However, Plaintiff was not abusing the so-called "system." Rather, Plaintiff was hurt and was still getting care of her injuries.

105.    Upon information and belief, similarly situated employees in the Plaintiff's position that had not made any protected complaints, were able to take time off for work-related

injuries and were not served with any disciplinary charges.

106.     Defendants' employee Defendant JASMIN retaliated against Plaintiff for reporting his unlawful sexual assault and harassment as well as discriminated against Plaintiff on the basis of her disability.

107.     On or about July 2, 2018, Plaintiff immediately submitted an appeal within the (20) day provision via a 600AR Intradepartmental Memorandum supported by her medical documentation.

108.     In or around this same time period, when Plaintiff inquired of Defendant JASMIN as to why she was wrongfully disciplined, Defendant JASMIN replied, "**you know what you put me through?**"

109.     Defendant DOC's Employee Defendant JASMIN blatantly admitted to retaliating against Plaintiff for reporting his sexual assault and unlawful behavior.

110.     Shortly thereafter, on or about July 13, 2018, without provocation and/or cause, the Defendants administratively transferred temporarily ("T.D.Y.") the Plaintiff to the Correction Academy (C.A.). While at the academy Plaintiff was served by the Academy Tour Commander with a fourth disciplinary MOC; Charges of Violating Sick Leave Directive 2258R-A and Directive 2262.

111.     The MOC charges are separate and apart from the Chronic Sick Designation paperwork that Defendant Jasmin signed and served to the Plaintiff while at the Transportation Division.

112.     On or about July 14, 2018, Plaintiff returned to Full Duty to the Transportation Division, at her regular post. However, her steady partner Officer Joseph Mascia to which Plaintiff had been paired/assigned to work with since June 2017, was adversely removed from said post.

113.     Both DOC Officer Mascia and Plaintiff inquired with Defendants as to why

removal from said post occurred but were given no explanation as to why this occurred.

114.     Plaintiff inquired specifically with Defendant JASMIN about said removal to which he responded: "You'll get over it" and walked away. This was not corrected until the complaint went to DOC Personnel.

115.     On or about July 25, 2018, after gathering all the courage she could, Plaintiff went to the NYPD's 114th Police Precinct to file a Sexual Harassment/Assault Complaint against Defendant JASMIN, as was suggested to Plaintiff by Defendants' JOHNSON and TYSON.

116.     Furthermore, in or around July 2018, Plaintiff filed complaints with the New York State Division of Human Rights, the Federal EEOC, as well as an official internal EEO complaint and Work Violence Complaint within the Department of Corrections.

117.     Yet, no corrective or reasonable action has been taken to assist the Plaintiff. Defendant JASMIN is still employed at Defendant DOC and Plaintiff's transfer request has remained ignored.

118.     Upon information and belief, Defendant Captain JASMIN in coordination with Defendant Captain BRITTON, recommended the Plaintiff to the DOC'S Trials and Litigation Division, in an attempt to force a tangible employment action upon the Plaintiff by stripping the Plaintiff of vacation and/or sick days.

119.     The Plaintiff further made internal and external EEO and protected complaints regarding the following altercation.

120.     Plaintiff Vega called Defendant Captain BRITTON for assistance and asked Defendant Captain BRITTON to come to the location and have the inmate moved to the back of the bus.

121.     Upon information and belief, Defendant BRITTON and Defendant JASMIN were and remain good friends.

122. Defendant BRITTON hesitated, delayed his response time, and upon arrival to Plaintiff's location, Defendant BRITTON refused to help the Plaintiff stating: **"I refuse to get involved."**

123. Defendant BRITTON neglected Plaintiff's pleas for help and stated: **"Get back in the bus and proceed with your run!"**

124. Defendant BRITTON's orders subjected Plaintiff to more hostility and threats by the inmate along with the possibility that the inmate would throw human feces at Plaintiff.

125. As the inmate saw that the Plaintiff got no support or respect from her Supervisor Defendant Captain BRITTON, the inmate said: **"Yea bitch, that's what you get!"**

126. As Plaintiff proceeded to drive on her route, while turning the corner, her Partner DOC Officer Mascia called out: **"He's going to do it!"**

127. When the Plaintiff turned around, she saw the inmate with his pants down and his buttocks pressed against the plexiglass in a squatted position ready to release onto Plaintiff.

128. Since Defendant BRITTON refused to help the Plaintiff, was deliberately indifferent towards Plaintiff's situation, and in fact subjected her to this vile treatment, Plaintiff pulled over the DOC bus and called the dispatch again to ask for DOC Captain Williams.

129. Dispatch advised the Plaintiff that Captain Williams was not in the vicinity.

130. As a result, Defendants transferred the Plaintiff to Defendant BRITTON, who began ordering Plaintiff to return to the bus. Other officers from the dispatch heard this as well but told Plaintiff to wait for Captain Williams.

131. While Plaintiff was waiting for Captain Williams, Defendant BRITTON was calling the Plaintiff consistently on the radio, ordering Plaintiff to go back onto the bus

and proceed with her run.

132.    Soon thereafter, Captain Williams appeared at Plaintiff's location, and she immediately asked Plaintiff "Don't you hear Captain BRITTON calling you on the radio?"

133.    Plaintiff started explaining the situation to her regarding the inmate and Defendant BRITTON's disregard for the Plaintiff's safety. Captain Williams then responded to the Plaintiff by stating: "You know what, put it on paper."

134.    Plaintiff was very frustrated and suffered from severe emotional distress because DOC supervisors refused to assist her.

135.    Captain Williams permitted the Plaintiff to be removed from this run, however she advised the Plaintiff and stated that it would be "a while" before Plaintiff would be able to assume her next post.

136.    Plaintiff was then ordered to write a report.

137.    On or about August 15, 2018, on Plaintiff's ordered report she writes: **"I feel as if I am intentionally being retaliated against for an unrelated matter to this situation. I feel that I am in a hostile situation that is unhealthy and fearful to be in.**

**<u>I am asking for HELP.</u>"**

138.    Upon further information and belief, Defendant JASMIN and BRITTON'S retaliatory acts came only in the wake of protected complaints of sexual assault and harassment. Despite providing proper medical documentation to the Defendants, Plaintiff is still being threatened with having sick and/or vacation days stripped away.

139.    In fact, Plaintiff Vega was referred to the disciplinary committee where Defendants attempted to strip the Plaintiff of sick/vacation days.

140.    Upon information and belief, referral for such discipline was ordered by Defendant Captain JASMIN and his co-conspirators.

141.     No other DOC employees that are similarly situated to the Plaintiff were treated in such a manner.

142.     However, after Plaintiff's counsel informed opposing counsel of a pending EEOC Charge, some of the charges coincidentally disappeared.

143.     The above are just some of the examples of the negligent retention, hostile work environment, gender discrimination, disability discrimination, sexual assault and sexual harassment to which Defendants subjected Clamant.

144.     Plaintiff VEGA suffered and will continue to suffer anxiety, depression, and significant emotional distress, as a direct result of Defendant's Employee JASMIN's sexual assault, sexual harassment and discrimination.

145.     Defendants' actions and conduct were intentional and intended to harm Plaintiff.

146.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

147.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of possible promotions and other compensation which such employment entails and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

148.     As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction of all lower Courts.

149.     As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

**AS AND FOR A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**

**(Not Against Individual Defendants)**

150.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

151.    Title VII states in relevant part as follows:

(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

152.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

153.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by discriminating against Plaintiff as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR
## DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

154.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

155.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding,

or hearing under this subchapter."

156.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or

privileges of employment because of her opposition to the unlawful employment

practices of Defendants.

**AS A THIRD CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER THE**
**NEW YORK CITY ADMINISTRATIVE CODE**
**(Not Against Individual Defendants)**

157.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

158.     The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful

discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the

actual or perceived age, race, creed, color, national origin, gender, disability, marital status,

sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ

or to bar or to discharge from employment such person or to discriminate against such person in

compensation or in terms, conditions or privileges of employment."

159.     Defendants engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory

working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

**AS A FOURTH CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER THE**
**NEW YORK CITY ADMINISTRATIVE CODE**
**(Not Against Individual Defendants)**

160.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

161.     The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be

unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate

against any person because such person has opposed any practices forbidden under this chapter..."

162.     Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

## AS A FIFTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

163.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

164.     New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

165.     Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

166.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

167.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

168.     Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendants)

169.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

170.     New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

  a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

  b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
  (1) the employee or agent exercised managerial or supervisory responsibility; or

  (2)  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

  (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

171.     Defendants violated the section cited herein as set forth.

### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### STATE LAW
### (Not Against Individual Defendants)

172.     Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of an individual's age, race, creed, color,

national origin, sexual orientation, military status, sex, disability, predisposing genetic

characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or

to bar or to discharge from employment such individual or to discriminate against such

individual in compensation or in terms, conditions or privileges of employment."

173.     Defendants engaged in an unlawful discriminatory practice by discriminating against the

Plaintiff as set forth herein.

174.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of Executive Law Section 296.

### AS A NINTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

175.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

176.     New York State Executive Law §296(7) provides that it shall be an unlawful

discriminatory practice:

           For any person engaged in any activity to which this section applies to retaliate or

           discriminate against any person because [s]he has opposed any practices forbidden

           under this article."

177.     Defendants engaged in an unlawful discriminatory practice by discharging, retaliating,

and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the

unlawful employment practices of Plaintiff's employer.

## AS A TENTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

178.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

179.     New York State Executive Law §296(6) provides that it shall be an unlawful

discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under
>
> this article, or attempt to do so."

180.     Defendants engaged in an unlawful discriminatory practice in violation of New York

State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the

discriminatory conduct.

## AS A ELEVENTH CAUSE OF ACTION
## VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983
### (Against All Defendants)

181.     Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated

herein.

182.     42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or
> usage of any state or territory or the District of Columbia subjects or causes to be
> subjected any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges or immunities secured by the
> constitution and law shall be liable to the party injured in an action at law, suit in
> equity, or other appropriate proceeding for redress . . .

183.     In committing the acts of discrimination and retaliation complained of herein, the

Defendants acted jointly and under color of state law to deprive Plaintiff Vega of her

clearly established constitutionally protected rights under the Fourteenth Amendment

of the United States Constitution.

184.     Plaintiff in this action is a citizen of the United States and all of the individual

the Plaintiff after she complained of unconstitutional violations and took steps to further harm the Plaintiff's constitutional rights.

194.    Defendant Captain BRITTON also knew or should have known he was unlawfully discriminating against Plaintiff and failed to respond or address such actions in any way.

195.    On information and belief, Defendant Captain JASMIN was personally involved in either ordering, or failing to take preventative and remedial measures to guard against the unconstitutional discrimination and retaliation against Plaintiff. Defendant Captain BRITTON also knew, or in the exercise of due diligence, should have known, that the unconstitutional actions taken against Plaintiff VEGA were discriminatory in nature and retaliatory.

196.    The failure of the individual supervisory Defendants to supervise and/or discipline any of the aforementioned Captains with respect to their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate indifference or intentional misconduct, which directly and proximately caused the injuries and damages to Plaintiff set forth herein.

## AS A THIRTEENTH CAUSE OF ACTION
## (EQUAL PROTECTION - 42 U.S.C. § 1983)

197.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

198.    Individual Defendant Captains JASMIN and BRITTON, were at all relevant times, supervising employees in the DOC, with oversight responsibility for the training, instruction and supervision of the Plaintiff.

199.    Defendant Captains JASMIN and BRITTON, failed to intervene to prevent the clearly discriminatory and retaliatory actions taken against Plaintiff.

200.    Defendant Captains JASMIN and BRITTON, actively participated in the clearly

discriminatory and retaliatory actions taken against Plaintiff

201.    Defendant Captains JASMIN and BRITTON, actively condoned other officers to participate in the clearly discriminatory and retaliatory actions taken against Plaintiff

202.    Defendant Captains JASMIN and BRITTON also knew or should have known that their conduct was unlawfully discriminating against Plaintiff and failed to respond or address such actions in any way.

203.    Upon information and belief, Defendant Captains JASMIN and BRITTON, were personally involved in either ordering or failing to take preventative and remedial measures to guard against the unconstitutional discrimination and retaliation against Plaintiff.

204.    Defendant Captains JASMIN and BRITTON knew, or in the exercise of due diligence, should have known, that the unconstitutional actions taken against Plaintiff was likely to occur.

205.    The failure of the individual supervisory Defendants to supervise and/or discipline any of the aforementioned Captains, officers, DOC prosecutors or other Defendants with respect to their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate indifference or intentional misconduct, which directly and proximately caused the injuries and damages to Plaintiff set forth herein.

## AS A FOURTEENTH CAUSE OF ACTION
### (EQUAL PROTECTIONS - 42 U.S.C. § 1983)

206.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

207.    The aforementioned sexual harassment Plaintiff was forced to endure at the hands of Supervisory Captain JASMIN amounts to gender discrimination.

208.    Supervisory Captain JASIM initially engaged Plaintiff by telling her **"Feel how hard my dick is".**

209.    The ensuing acts of sexual harassment committed by Defendants were based on
the Plaintiff's gender.

## AS A FIFTEENTH CAUSE OF ACTION
### *(Monell* Claim - 42 U.S.C. § 1983)

210.    Defendants violated the above statute through multiple acts of unlawful gender
and disability discrimination, sexual harassment, and retaliation.

211.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated
herein.

212.    All of the acts and omissions by the Captain Defendants described above, with
regard to the unreasonable, unlawful, and retaliatory discrimination against Plaintiff
were carried out pursuant to overlapping *de facto* policies and practices of the City of
New York and it's agency, which were in existence at the time of the conduct alleged
herein and were engaged in with the full knowledge, consent, and cooperation and
under the supervisory authority of Defendant The City Of New York Department Of
Corrections.

213.    Defendant The City Of New York and it's agency, The Department Of
Corrections, by their policy-making agents, servants and employees, authorized,
sanctioned and/or ratified the individual wrongful acts of Captains JASMIN and
BRITTON and/or failed to prevent or stop those acts; and/or allowed or encouraged
those acts to continue.

214.    The actions of Defendants Captain JASMIN and BRITTON resulted from and
were taken pursuant to the *de facto* policies and/or well-settled and widespread customs
and practices of the DOC. The relevant policies, customs and practices with regard to
the disability and gender discrimination, and sexual harassment perpetrated against
Plaintiff are that DOC Captains are permitted to discriminate against and unlawfully
retaliate against DOC officers who make protected complaints based on sexual

harassment.

215. The existence of the foregoing unlawful *de facto* unwritten policies and/or well-settled and widespread customs and practices is known to be encouraged, and/or condoned by supervisory and policy-making officers and Captains of the DOC.

216. Notwithstanding knowledge of such an unlawful *de facto* unwritten policy, practice, and/or custom, these supervisory and policy-making officers and Captains of the DOC, have not taken steps to terminate this policy, practice, and/or custom, and do not properly train Captains with regard to acts of unlawful discrimination and/or unlawful retaliation, and instead sanction and ratify this policy, practice, and/or custom through their active encouragement of, deliberate indifference to, and/or reckless disregard of the effect of said policies, practices, and/or customs upon the constitutional rights of Plaintiff and other persons similarly situated to Plaintiff.

217. The aforementioned DOC policy, practice, and/or custom of failing to supervise, train, instruct, and discipline Captains within the DOC is specifically exemplified and evidenced by the misconduct detailed herein.

218. Plaintiff's injuries were a direct and proximate result of the Defendant DOC's wrongful *de facto* policy and/or well-settled and widespread custom and practice and of the knowing and repeated failure of Defendant DOC to properly supervise and train Captains with regard to unconstitutional discrimination and retaliatory conduct.

219. Defendant DOC knew or should have known that the acts alleged herein would deprive Plaintiff of her rights in violation of the Fourteenth Amendment to the United States Constitution.

220. Defendant DOC knew or should have known that the actions unlawful actions taken against the Plaintiff would occur since almost identical actions of Defendants were complained of in the past and nothing was done to remedy such unlawful behavior.

221.     Defendant DOC is directly liable and responsible for the acts of the individual

Captain Defendants because it repeatedly and knowingly failed to properly supervise,

train, and instruct them to require compliance with the constitutions and laws of the

State of New York and the United States.

## AS A SIXTEENTH CAUSE OF ACTION
### VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1985
### <u>(Against All Defendants)</u>

222.     Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated

herein.

223.     Section 1985(3) provides, in relevant part, that:

> If two or more persons in any State or Territory conspire . . . for the purpose of
> depriving, either directly or indirectly, any person or class of persons of the
> equal protection of the laws . . . in any case of conspiracy set forth in this section,
> if one  or more persons engaged therein do, or cause to be done, any act in
> furtherance of the object of such conspiracy, whereby another is injured in his
> person or property . . . the party so injured or deprived may have an action for
> the recovery of damages, occasioned by such injury or deprivation, against any
> one or more of the conspirators.

224.     All of the aforementioned Defendants acted either, directly or indirectly, in

unlawfully discriminating and retaliating against Plaintiff on the basis of gender.

225.     Similarly, all of the aforementioned Defendants acted, either directly or indirectly,

to cover-up the unlawful discriminatory and retaliatory actions against Plaintiff.

## AS A SEVENTEENTH CAUSE OF ACTION
### VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1986
### <u>(Against All Defendants)</u>

226.     Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated

herein.

227.     Defendants failed to prevent a conspiracy amongst the DOC employees to deprive

Plaintiff of rights protected by the United States Constitution.

228.     Specifically, Defendants failed to prevent the execution of systematically

discriminatory and retaliatory actions against Plaintiff.

229.     As a result, Defendants violated the above statute.


## AS A EIGHTEENTH CAUSE OF ACTION UNDER
## N.Y.C. ADMINISTRATIVE CODE §8-903-6 ALSO KNOWN AS
## THE GENDER-MOTIVATED VIOLENCE ACT ("GMVA")
## (As Against Defendant Jasmin)

230.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as set forth at length herein.

231.     In relevant part, GMVA, N.Y.C. Code § 8-904 provides, "[A]ny person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual."

232.     Section 8-903 defined "crime of violence" as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law…if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges."

233.     Section 8-903 also provides that such an act is "motivated by gender" if it is "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."

234.     In this case, Defendant Jasmin (i) committed an act that constituted a felony when (ii) he presented a serious risk of physical injury and did in fact physically injure the Plaintiff when he sexually assaulted Plaintiff (iii) on account of her gender, (iv) when sexual advances were rejected and Defendant Jasmin developed or already had an animus toward the Plaintiff's gender, (v) which resulted in serious injury to the Plaintiff who was in fact a female.

235.     Defendant Jasmin is liable to the Plaintiff under the GMVA in which Plaintiff

VEGA claims damages in an amount to be determined at trial.

## AS A NINETEENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
### (not against individual Defendants)

236.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

237.     Plaintiff claims Defendants violated Title I of the Americans with Disabilities

Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume

42 of the United States Code, beginning at section 12101.

238.     SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered

entity shall discriminate against a qualified individual with a disability because of the

disability of such individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and

other terms, conditions, and privileges of employment."

239.     Defendants violated the above and Plaintiff suffered numerous damages as a

result.

## AS A TWENTEETH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
### (not against individual Defendants)

240.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

241.     SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate

against any individual because such individual has opposed any act or practice made

unlawful by this chapter or because such individual made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing under this

chapter.

242.    Defendants violated the above and Plaintiff suffered numerous damages as a result.


WHEREFORE, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards, to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable laws; and

(e) such other and further relief as appears just and proper.


Dated: New York, New York
May 30, 2019



                                        L& D Law, P.C.
                                        Liggieri & Dunisha

                                        _____
                                        Paul Liggieri, Esq.
                                        11 Broadway, Suite 615
                                        New York, NY 10004
                                        (212) 374-9786
                                        *Attorneys for Plaintiff*