UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOANNE VEGA,

                                   Plaintiffs,

              -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF CORRECTION,
CAPTAIN EDWICH JASMIN (Individually And
In His Respective Capacity As An Acting Officer
of the New York City Department of
Correction), CAPTAIN LEON BRITTON
(Individually And In His Respective Capacity As
An Acting Officer of the New York City
Department of Correction), KAREN TYSON and
KENYATTA JOHNSON (Individually And In
Their Respective Capacities as Executive
Members of the New York City Department of
Correction Union and Members of the New
York City Department of Correction),

                                   Defendants.

**MEMORANDUM & ORDER**
**19-CV-3237 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Joanne Vega brings this action against Defendants The City of New York, The New York City Department of Correction, Captain Edwich Jasmin, Captain Leon Britton, Karen Tyson, and Kenyatta Johnson for violations under 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Before the court is a Motion to Dismiss the Amended Complaint brought by Defendants Tyson and Johnson. (Defs.' Mot. to Dismiss ("Mot.") (Dkt 41); Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss ("Opp.") (Dkt 42); (Defs.' Reply Mem. in Supp. of Defs.' Mot. to Dismiss ("Reply") (Dkt 43).) For the reasons stated below, Defendants' Motion to Dismiss is GRANTED.

1

## I.  BACKGROUND

### A.  Factual Background

The court takes the following factual background and allegations from Plaintiff's Amended Complaint. (*See* Am. Compl. (Dkt 31).) Since 1989, Plaintiff Joanne Vega has been employed as a Corrections Officer with the New York City Department of Correction (the "DOC"). (*Id*. ¶ 32.) Defendants Karen Tyson and Kenyatta Johnson are Executive Officers of the Correction Officers Benevolent Association ("COBA"), the labor union representing DOC Corrections Officers. (*Id*. ¶¶ 21-22.)

On October 31, 2016, Plaintiff was transferred from her post at the North Infirmary Command ("NIC") on Rikers Island to DOC's Transportation Division. (*Id*. ¶¶ 32-33, 36.) Following her transfer, Plaintiff's supervisor was DOC Captain Edwich Jasmin, whom she had met more than 27 years earlier while working at NIC. (*Id*. ¶¶ 32, 34, 36, 39.) Plaintiff alleges that on or about March 22, 2017, while they were at work, Jasmin directed her into a men's locker room and sexually assaulted her. (*Id*. ¶ 37.) The incident left Plaintiff fearful for both her safety at work and the possibility of retaliation if she reported Jasmin's conduct. (*Id*. ¶¶ 50, 52-53.)

On or about November 3, 2017, Plaintiff reported Jasmin's sexual assault to Defendants Karen Tyson and Kenyatta Johnson, Executive Officers of Plaintiff's union. (*Id*. ¶¶ 63-64.) Plaintiff alleges that Tyson and Johnson were aware of prior misconduct complaints against Jasmin brought by other individuals. (*Id*. ¶ 77.) She alleges that Tyson told Plaintiff that Jasmin was a "very close friend" of hers. (*Id*. ¶ 65.) Plaintiff also claims that Tyson and Johnson informed Plaintiff that they would not address her complaint unless she first reported the assault to the New York City Police Department. (*Id*. ¶ 77.)

Plaintiff states that during the meeting she asked Tyson and Johnson to transfer her out of the Transportation Division, so that she would not have to report to or interact with Jasmin. (*Id.* ¶ 70.) Tyson and Johnson called the Transportation Division Facility Commander during their meeting and communicated Plaintiff's complaint and desire for a transfer. (*Id.* ¶ 73.) However, Tyson and Johnson did not offer to effectuate Plaintiff's transfer themselves, as Plaintiff alleges they had the authority to do and had done for other officers in the past. (*Id.* ¶¶ 22, 74.) Plaintiff also asked Tyson and Johnson if COBA would mediate and resolve the situation between Jasmin and herself. (*Id.* ¶ 71.) They refused. (*Id.*)

Plaintiff alleges that after her meeting with Tyson and Johnson, they informed Jasmin of her complaint against him. (*Id.* ¶ 76.) Plaintiff also alleges that Tyson and Johnson did not discipline Jasmin in connection with her complaint. (*Id.* ¶ 67.) At some unspecified later date, Plaintiff again asked Tyson and Johnson for a transfer out of the Transportation Division, and they refused. (*Id.* ¶ 83.) On or about July 25, 2018, Plaintiff filed a sexual harassment and assault complaint against Jasmin with the police department. (*Id.* ¶ 124.) Even after the police report was filed, Tyson and Johnson still did not effectuate Plaintiff's requested transfer. (*Id.* ¶ 125.)

On or about January 10, 2018, Plaintiff was involved in a work-related car accident. (*Id.* ¶ 89.) Plaintiff took several months off to recover from her injuries. (*Id.* ¶ 93.) During her recovery, Plaintiff was served with three disciplinary charges known as Memoranda of Complaints ("MOCs"), signed and served on her by Jasmin. (*Id.* ¶¶ 95-97.) When Plaintiff did return to work, the DOC Acting Warden and Jasmin served Plaintiff with another MOC stating that she would receive a "Designation of Chronic Absent." (*Id.* ¶ 110.) According to Plaintiff, similarly situated employees were not served with disciplinary charges for taking time

off to recover from work-related injuries. (*Id.* ¶ 114.) Subsequently, Jasmin and Captain Leon Britton, a Personnel Administrative Captain with the DOC's Department of Transportation, allegedly attempted to strip Plaintiff of her vacation and sick days. (*Id.* ¶ 128.) Plaintiff also alleges that Britton and other DOC supervisors refused to help her during a particularly tense situation with an inmate. (*Id.* ¶¶ 132-38.) Plaintiff contends that these incidents reflect a pattern of retaliation in response to her efforts to report the assault by Jasmin. (*Id.* ¶¶ 105, 115, 117-18, 128, 148.)

Plaintiff alleges that she suffers from significant emotional distress and that she endured adverse employment actions, including the deprivation of opportunities for promotion, as a result of the actions taken by Defendants. (*Id.* ¶¶ 156-57.)

### B.  Procedural History

On July 7, 2018, Plaintiff filed a complaint with the New York State Division of Human Rights, alleging discrimination and retaliation. (*Id.* ¶ 27.) On November 3, 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment, gender-based discrimination, and retaliation. (*Id.* ¶ 24.) Plaintiff received a "Right to Sue" letter from the EEOC on or about March 1, 2019. (*Id.* ¶ 25.) On August 13, 2019, Plaintiff's state administrative complaint was dismissed, allegedly for reasons of administrative convenience. (*Id.* ¶ 31.)

Plaintiff filed her complaint in this court on May 30, 2019 and filed an amended complaint on Feb 27, 2020, alleging that Defendants Jasmin, Britton, Tyson, Johnson, the City of New York, and the New York City Department of Correction had engaged in discriminatory practices in violation of 42 U.S.C. § 1983, the New York State Human Rights Law, and the New York City Human Rights Law. (*See* Compl. (Dkt. 1); Am. Compl.)

4

On May 26, 2020, Defendants Tyson and Johnson filed a Motion to Dismiss for failure to state a claim and for lack of jurisdiction. (*See* Mot.) Meanwhile, Plaintiff and the remaining defendants— the City of New York, the New York City Department of Correction, Jasmin, and Britton (collectively, the "City Defendants")— engaged in settlement discussions with Plaintiff. On June 1, 2020, counsel for Tyson and Johnson informed Magistrate Judge Roanne L. Mann that his clients did not intend to participate in an upcoming settlement conference. (*See* June 1, 2020 Letter from Howard Wien to Magistrate Judge Mann (Dkt. 47).) Judge Mann issued a Memorandum & Order that same day, setting forth her legal authority to compel Defendants' participation and directing them to attend the conference. (June 1, 2020 Mem. & Order (Dkt. 48) at 1-2.)

On June 3, 2020, Plaintiff and the City Defendants informed the court that they had agreed to a settlement. (*See* June 3, 2020 Order (Dkt. 50).) Plaintiff's claims against the City were accordingly dismissed with prejudice on July 13, 2020. (*See* Stip. of Dismissal (Dkt. 52).) The claims against Defendants Tyson and Johnson remain.

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).[1] A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* To decide Defendants' motion to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *L-7 Designs, Inc. v.*

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

*Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). However, the court will "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court must then evaluate the "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.* This plausibility analysis "does not impose a probability requirement at the pleading stage," but requires the complaint to provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556.)

## III. DISCUSSION

Plaintiff brings a federal civil rights claim against Defendants Tyson and Johnson (hereafter, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging that they violated her right to Due Process by refusing to exercise their authority to investigate her complaint against Jasmin or initiate her transfer. (Am. Compl. ¶¶ 235-40.) Plaintiff also brings discrimination claims against Defendants under the NYSHRL and NYCHRL. (*Id.* ¶¶ 173-81, 185-93.) Defendants argue that Plaintiff's federal claim should be dismissed pursuant to Fed R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Mot. at 1.) Defendants further argue that the court should dismiss Plaintiff's state-law and city-law claims for lack of supplemental jurisdiction. (*Id.* at 10.)

### A.   Failure to State a Claim

42 U.S.C. § 1983 allows an individual to file a claim against any person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." In order to state a

claim under § 1983, a plaintiff must show: 1) that her constitutional rights were violated and 2) that the defendant was "acting under the color of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996).

While DOC employees, including union officials, are considered public officials because they are employed by the city, "employment by a state or municipality does not automatically mean that [an employee's] actions are taken under the color of state law." *Id*. at 43. The Second Circuit found in *Kern*, for example, that although the defendant was a lieutenant in the Rochester Fire Department, he was acting in his capacity as the union president when he sexually harassed and assaulted the plaintiff, and thus was not a state actor for the purposes of the claim. *Id.* The court took into account that the defendant did not hold his position as union president through any action taken by the city, and that in his capacity as union president, he "performed functions solely for the benefit of the union, not for the benefit of the City." *Id*.

Thus, in order to determine whether an individual is a state actor, courts must analyze whether she was acting in her capacity as a union official or as a state employee at the time the unconstitutional acts were committed. If the individual was acting as a state employee, then her actions may have been "taken under the color of state law." However, if she was acting in her capacity as a union official, her actions might not qualify as state actions. Here, as Plaintiff's complaint states that Defendants abused their authority as COBA executives, Plaintiff is arguing that Defendants were acting in their capacity as union leaders, not as DOC employees, when they allegedly violated her constitutional rights. (Am. Compl. ¶ 238.) This is consistent with Second Circuit case law acknowledging that "labor unions . . . generally are not state actors." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002; *Hopkins v. Seabrook*, No. 14CV0600-LTS-JLC, 2015 U.S. Dist. LEXIS 19377, at *3 (S.D.N.Y. Feb. 18, 2015). Accordingly,

district courts have repeatedly concluded that labor union officials are also not considered state actors. *See, e.g.*, *Guttilla v. City of New York*, 14-CV-156 (JPO), 2015 U.S. Dist. LEXIS 12637, at *8, 15-16 (S.D.N.Y Feb. 3, 2015) (president of the UFT, a teacher's union, and attorney Assistant General Counsel to NYSUT, legal arm of UFT, not state actors); *Minerva v. County of Suffolk*, No. 15-CV-6433 (JFB) (AKT), 2017 U.S. Dist. LEXIS 43757, at *10-11 (E.D.N.Y. Jan. 30, 2017) (court held that union defendants not state actors under any theory). Courts in this circuit have dismissed claims against COBA officials where plaintiffs have failed to allege that the officials were state actors or that they were acting under the color of state law. *Hopkins*, 2015 U.S. Dist. LEXIS 19377, at *3-4. Here, similarly, Plaintiff has failed to allege facts demonstrating that Tyson and Johnson were acting under the color of state law. Accordingly, the court concludes that Plaintiff has failed to sufficiently allege that Defendants were acting as state actors or under the color of state law, rather than in their capacity as COBA executives.

Even if Tyson and Johnson are considered to be private actors, they may still be held liable under § 1983 on the theory that they coordinated with state officials to violate Plaintiff's constitutional rights. The Supreme Court has held that private parties are "acting under the color of [state] law" if they conspire with state actors to commit unconstitutional acts. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). To prove a conspiracy claim, a plaintiff must show: "1) an agreement between a state actor and a private party; 2) to act in concert to inflict an unconstitutional injury; and 3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25. Although conspiracies are inherently "secretive operations that can hardly ever be proven by direct evidence," plaintiffs need more than conclusory allegations to survive a motion to dismiss. *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994); *Ciambriello*, 292 F.3d at 325. For example, a plaintiff was able to state a conspiracy

claim by alleging that union officials reneged on their initial agreement with the plaintiff immediately after a closed-door meeting with a state employee. *Jamison v. Chapman*, 6:08-CV-856-DNH-GHL, 2009 U.S. Dist. LEXIS 104059, at *23-24 (N.D.N.Y. Nov 9, 2009). Similarly, the Second Circuit found that evidence submitted by plaintiff that his union, with the knowledge or consent of state employees, hired private investigators to investigate him, and placed him under surveillance, was sufficient for the district court to exercise its jurisdiction over the § 1983 and related state claims under a conspiracy theory of § 1983 liability. *Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 881 (2d Cir. 1988).

It is not entirely clear from the parties' briefs whether Plaintiff is alleging state action under a conspiracy theory. Regardless, the argument—even if properly raised—is unavailing. Even if Plaintiff's allegations supported her claim that she was deprived of her right to due process, there is no basis on which to conclude that Defendants conspired with any state actors to cause that harm. Plaintiff argues that COBA is "inextricably intertwined" with the state because all DOC officers join COBA, and because COBA is funded by DOC officers who are required to pay mandatory dues. (*Id.* at 3.) However, that speaks to whether the union itself is a state actor, not to whether Defendants, as union officers, acted under color of state law. Plaintiff's only allegation in support of the conclusion that Defendants themselves were acting in collaboration with state actors is that they both "presumptively" participate in the DOC retirement plan. *Id.* However, participation in a state-funded retirement plan is not enough to prove that there was any agreement between Defendants themselves and the DOC to commit unconstitutional acts. Plaintiff's amended complaint also states that Defendants made a phone call to a DOC official to report that Plaintiff wanted to be transferred.

(Am. Compl. ¶ 73.) But even if this did constitute an unconstitutional act, it also does not amount to an agreement between Defendants and the DOC.

Plaintiff also alleges that Defendants worked in concert with Jasmin and other DOC employees to deprive Plaintiff of her due process rights. (Opp. at 6.) She emphasizes that Defendant Tyson allegedly told Plaintiff that Jasmin was a "very close friend" of hers. (Am. Compl. ¶ 65). Plaintiff also claims that Jasmin became more hostile to Plaintiff after she made her complaint to Defendants, and explained his behavior by asking Plaintiff, "you know what you put me through?" (*Id.* ¶¶ 79-80, 117.) She suggests that Tyson's purported friendship with Jasmin, along with Tyson and Johnson's refusal to help her and Jasmin's subsequent hostility and remarks, support an inference that Defendants informed Jasmin that Plaintiff had contacted union leadership and accused him of sexually assaulting her.

Plaintiff's allegations do not directly establish that Jasmin was aware that Plaintiff had reported the assault to union leadership, but they do support an inference that Jasmin knew Plaintiff had leveled a complaint against him. However, that inference alone does not establish that Defendants themselves were the informants. Defendants were not the only DOC employees that had knowledge of the complaint; Plaintiff alleges that during her initial meeting with Defendants, Tyson and Johnson called the Transportation Division Facility Commander to relay Plaintiff's complaint and desire for a transfer. (*Id.* ¶ 73.) Moreover, even if Defendants *did* notify Jasmin of Plaintiff's complaint against him, it is not clear whether informing Jasmin was inappropriate or outside the scope of Defendants' responsibilities as COBA officers. Nor was it necessarily contrary to Plaintiff's express wishes: Plaintiff does not specifically allege that she asked Defendants to keep her complaint confidential. In fact, Plaintiff alleges that she "advised [Defendants] that she *desired for . . . Jasmin to be called*

*in* so that the union could mediate and resolve the situation." (*Id.* ¶ 71 (emphasis added).) That factual allegation is logically inconsistent with the central premise of Plaintiff's argument, which is that Defendants had an obligation not to make Jasmin aware of Plaintiff's complaint.

Even if it can be assumed that Defendants informed Jasmin of the complaint, and that doing so was inconsistent with Defendants' role as COBA executives and contrary to Plaintiff's wishes, the facts that are alleged by Plaintiff are still not sufficient to establish a conspiracy between Defendants and Jasmin. Nothing in the Amended Complaint suggests that Defendants' purpose in informing Jasmin was to help him retaliate against Plaintiff, or that Defendants worked in concert with Jasmin to harass Plaintiff. At most, the Amended Complaint plausibly supports an inference that Jasmin behaved more aggressively towards Plaintiff in response to the news, perhaps shared with him by Johnson and Tyson, that Plaintiff had reported the sexual assault. Those allegations therefore fall short of suggesting a conspiracy between Johnson, Tyson, and Jasmin to inflict an unconstitutional injury.

Because the court finds the Plaintiff's allegations fail to state a cause of action against Defendants Tyson and Johnson under 42 U.S.C. § 1983, the court dismisses Plaintiff's federal cause of action with prejudice.

## B.   Supplemental Jurisdiction

28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action . . .  that they form part of the same case or controversy . . . ." Here, as this court has original jurisdiction over the federal § 1983 claim, it may exercise supplemental jurisdiction to consider Plaintiff's remaining state law claims. (Am. Compl. ¶¶ 174-75, 178, 180-81, 189-90, 192-

93.) However, a district court can decline to exercise supplemental jurisdiction over a claim if: "(1) [the supplemental claim] raises a novel or complex issue of State law, (2) [the supplemental claim] substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Courts have expressed a preference for declining jurisdiction over supplemental state law claims when federal claims are dismissed. The Supreme Court held in *United Mine Workers v. Gibbs* that while supplemental jurisdiction is a "doctrine of discretion," if the principles of "judicial economy, convenience, and fairness to litigants" are not served by an exercise of supplemental jurisdiction, district courts "should hesitate to exercise jurisdiction over state claims . . . ." 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, n. 7 (1988). This is especially true when the balance of the *Gibbs* factors indicate that the claim would be better suited to state court. *Cohill*, 484 U.S. at 350.

The Supreme Court has suggested that district courts may act appropriately by declining to exercise supplemental jurisdiction, in particular, when the federal claims of a case are dropped in the early stages of a suit, leaving only the state law claims. *Id*. A case is in the early stages of litigation when "there has been limited or no discovery, no judicial opinions or orders have been issued, and limited judicial resources have been invested in the case." *Khan*, 2016 U.S. Dist. LEXIS 16558, at *30. In such a situation, because "the interests of economy and convenience in retaining supplemental jurisdiction are modest," the district court should decline to exercise supplemental jurisdiction over the state claims. *Id.*; *Cohill*, 484 U.S. at 350. The Second Circuit has similarly stressed that if the federal claims are dismissed at an early stage of a case,

"courts should generally decline to exercise [supplemental] juris-diction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). In these cases, "in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point towards declin-ing to exercise jurisdiction over the remaining state law claims." *Valencia*, 316 F.3d at 306 (quoting *Cohill,* 484 U.S. 343, 350 n.7). In contrast, when the court is farther along in litigation, and there has been a "substantial expenditure in time, effort, and money in preparing the dependent claims," the relevant factors may weigh in favor of retaining jurisdiction over the state claims. *Purgess v. Sharrock*, 33 F.3d 134, 138-39 (2d Cir. 1994); *Nowak v. Iron-workers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (affirming that district court had properly exercised jurisdiction over state claims when federal claim was dismissed only nine days before the start of trial).

The present case is in the early stages of litigation. The parties are a long way off from trial, which would occur only after fur-ther discovery and, in all likelihood, the briefing and adjudication of a motion for summary judgment. Accordingly, the court de-clines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.[2]

---

[2] Plaintiff may bring her claims in state court, should she wish to pursue them further. Under New York law, if a plaintiff's action is timely com-menced and "is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defend-ant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment on the merits," the plaintiff has six months from the termi-nation of the suit to commence a new action. N.Y. C.P.L.R. § 205(a). Because Plaintiff brought this case in a timely manner, and her claims are dismissed for reasons other than those set forth in § 205(a), Plaintiff may file her claims in state court within six months of the issuance of this order.

## IV.  CONCLUSION

For the reasons stated above, Defendants' (Dkt. 41) Motion to Dismiss is GRANTED. Plaintiff's federal claim is dismissed with prejudice, and Plaintiff's state-law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.


Dated:      Brooklyn, New York
            March 4 , 2021

                                    /s/ Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

14